COUNTY OF HAMILTON, APPELLEE, v. HERLUF O. THOMSEN, APPELLANT.

63 N. W. 2d 168

Filed March 5, 1954. No. 33429.

*Fraizer & Fraizer,* for appellant.

*Clarence S. Beck,* Attorney General, *Homer L. Kyle,*

and *John W. Newman,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action at law instituted by the County of Hamilton, Nebraska, plaintiff and appellee, against Herluf O. Thomsen, defendant and appellant, to recover $2,526.36 claimed to be due and payable for maintenance of Mae Thomsen, the wife of the defendant, at the Hastings State Hospital at Ingleside, Nebraska.

A trial was had to a jury and a verdict was returned in favor of plaintiff for $2,000.75. Judgment was entered on the verdict. Motion for new trial was filed and overruled. From the judgment and the order overruling the motion for new trial the defendant has appealed.

The salient facts necessary to an understanding of the questions involved are the following:

On May 9, 1939, Mae Thomsen, wife of the defendant, was admitted to the state hospital at Ingleside, Nebraska, where she remained until December 15, 1939. The hospital was and is maintained by the state. It was denominated at that time a hospital for the insane. It is now denominated a hospital for the mentally ill. She was readmitted on May 19, 1941, and remained until September 9, 1942. She was readmitted on June 9, 1949, and remained in the hospital until February 29, 1952, when she was paroled to her husband.

The action here is for the recovery of $116.60 for the period beginning May 9, 1939, to December 15, 1939; $309.01 for the period beginning May 19, 1941, and ending September 9, 1942; and $2,000.75 for the period from June 9, 1949, to February 29, 1952, or a total of $2,426.36.

That portion of the action which pertained to the first and second periods when Mrs. Thomsen was in the hospital was, by the effect of instructions given, withdrawn by the court from consideration by the jury and only

the third submitted. The verdict and judgment were for the amount claimed as to this one.

No cross-appeal was taken by the plaintiff, therefore for the further purposes of this case we are concerned only with the question of whether or not the plaintiff is entitled to recover on this part of the pleaded cause of action.

To the petition the defendant filed a general demurrer which was renewed in the answer. The amended answer contains what amounts to a general denial and in it is also pleaded unconstitutionality of the statutory provision which contains the basis for the action as it was submitted to the jury.

The statutory provision brought into question is section 83-352, R. R. S. 1943. The section in its present form was enacted in 1949 and was in certain respects amendatory of preexisting statutes.

The act of 1949 provides, among other things, that if the spouse of a patient in the state hospital is possessed of an estate and income sufficient to meet the expense of the care and maintenance in the hospital without depriving those dependent upon the patient or spouse of their necessary support the spouse shall pay to the superintendent of the hospital quarterly a sum to be fixed by the Board of Control which shall be an amount equal to the per capita cost of maintaining the patient in the hospital.

This provision is not substantially different in the respect mentioned from long preexisting provisions.

The matter of care of the mentally ill is not a new one. The duty to provide care was assumed by the territorial Legislature in 1865. Laws 1865, p. 8. This assumption was carried into the statutes after statehood.

By the act of 1873, chapter 31, page 411, the Legislature imposed a burden on the several counties to support and maintain those admitted to the state hospital from the respective counties. This burden has been continued from that time down to the present date without

substantial change. Only mechanics of application have changed.

By the act of 1873 it became the duty of the board of trustees to fix the per capita cost of maintenance of patients in the hospital (G. S. 1873, c. 31, § 46, p. 422), and then quarterly to certify the amounts attributed to the respective counties to the state auditor whose duty it then became to notify the county clerks and charge the amounts to the counties (G. S. 1873, c. 31, § 47, p. 422). In this manner the amounts became collectible from the counties.

There have been some changes in the mechanics of this operation but they have been so slight as not to require further mention here.

This burden however even at the outset was not unconditional and at no time over the years did it become unconditional. Chapter 31, section 48, of the Laws of 1873, declared: "The provisions herein made for the support of the insane at public charge, shall not be construed to release the estates of such persons nor their relatives from liability for their support, * * *."

Though there have been amendments over the years relating to the care of the mentally ill no substantial change has been made in this declared obligation.

In 1947 the declaration of obligation became less general and more specific. The obligation was imposed on the spouse, the parent, and the child. § 83-352, R. S. 1943, as amended by the Laws of 1947, c. 335, § 40, p. 1072. There has since been no substantial change.

Section 48 of the act of 1873 empowered county commissioners to collect for maintenance from persons legally bound to support patients in the hospital. This remained true until 1915 when the superintendent was empowered to maintain action in behalf of the state. Laws 1915, c. 134, § 1, p. 299. This power continued until 1945 when the power was given to the county to sue in the name of the state. Laws 1945, c. 248, § 2, p. 784. In 1949 power was conferred on the counties to sue

in their own behalf.  § 83-352, R. R. S. 1943.

As pointed out the defendant questions the constitutionality of the act under which the action is brought. He does not question it on the ground of lack of power to enforce the obligation upon him to pay for the maintenance of his wife.  In any event such a contention, if made, would be without merit since it is clear that a statute imposing liability on the spouse of a mentally ill person to pay the cost of maintenance in a state hospital is constitutional.  State v. Heupel, 114 Neb. 797, 210 N. W. 275, 48 A. L. R. 728; 28 Am. Jur., Insane and Other Incompetent Persons, § 44, p. 684.

The basis of his contention is that the title to the amendatory act is not broad enough to permit the Legislature to provide the specified procedure for maintenance of the action against him.

The title to the act in question is, to the extent necessary to state it, the following:  "AN ACT to amend section 83-352, Revised Statutes Supplement, 1947, relating to state institutions; to provide procedure for the recovery of cost of maintenance of patients in a hospital for the mentally ill; * * *; and to repeal the original section."  Laws 1949, c. 298, p. 1010.

The objection is that the title is violative of the constitutional provision that no bill shall contain more than one subject which shall be clearly expressed in the title or specifically that the title is too broad in that in addition to providing for the maintenance of mentally ill persons in the state hospital it creates a cause of action in favor of a county and a right to bring suit.

The contention is basically, in the light of the legislative history adverted to herein, unsound.  The amendment does nothing more than to prescribe a procedure for reimbursement to the county for the payment of an obligation of the spouse for the support of a mentally ill person in the state hospital.  This obligation of the spouse to the county is basically and inextricably of the substance of the legislation on this subject.

It is a rule that if the general purpose of a legislative act is expressed in the title and the matter contained in the body of the act is germane thereto, the title is sufficient to satisfy constitutional requirements. State ex rel. Baughn v. Ure, 91 Neb. 31, 135 N. W. 224; Sheridan County v. Hand, 114 Neb. 813, 210 N. W. 273; City of Mitchell v. Western Public Service Co., 124 Neb. 248, 246 N. W. 484.

The case here clearly falls within the purview of this rule.

The defendant urges that in any event the plaintiff may not recover for maintenance for any period prior to August 27, 1949, which was the effective date of the 1949 amendment, for the reason that to so allow would cause the amendment to operate retroactively and not prospectively. This contention is based on the theory that a new right has been created. This theory is not tenable. The right involved is based on the obligation of the spouse to maintain his wife which right, as has been pointed out, obtained throughout the entire year of 1949 and before.

No rule of constitutional interpretation is violated by a legislative provision declaring retroactively a procedural method of recovery upon an existing substantive right. Such a provision may be retroactive in its application. 82 C. J. S., Statutes, § 421, p. 996; 50 Am. Jur., Statutes, § 482, p. 505.

The contention that the amendment in this respect is unconstitutional is without merit.

The defendant substantially contends that since the statute (§ 83-352, R. R. S. 1943) makes no provision for allocation of funds received as the result of such actions as this it ought to be said that there shall be no liability on persons having the status of the defendant.

We fail to see, even if there be no provision for allocation of money recovered, how any benefit could flow from it to the defendant. His obligation to maintain his wife in the state hospital has become fixed by law and

while the disposition of funds coming to a county is of general public concern the disposition cannot be of particular concern in an action of this kind.

The next question presented is that of whether or not the evidence adduced to sustain the claim was erroneously admitted and whether or not there was competent evidence to sustain the claim. This point relates to the matter of proof of the rate charged against the defendant for the time involved. The only evidence adduced to sustain the rate or rates were copies of resolutions adopted by the Board of Control and certain testimony of the superintendent of the hospital.

The statute provides that the rate or sum shall be "fixed by the Board of Control which shall be an amount equal to the per capita cost of maintaining the patient in the hospital." § 83-352, R. R. S. 1943.

Dr. G. Lee Sandritter, the superintendent of the hospital, was called and gave testimony. In his testimony the following appears: "Q What factors were taken into consideration in making these computations? A The dates on which the patient was in the hospital, and the maintenance charges set for us by the Board of Control during those dates." It is to be observed that there is nothing in this to indicate the basis of the charge set by the Board of Control.

Charles R. Kuhle, secretary of the Board of Control, was called as a witness. He identified three exhibits which were admitted in evidence over objection. These were not original records. Each was a copied excerpt from the minutes of the Board of Control signed by the chairman and the witness and sworn to before a notary public. They contained the rates for maintenance of patients in the state hospitals as fixed by the Board of Control. They were objected to substantially on the ground that they were without foundational proof necessary to admit them as evidence of the records of the Board of Control.

They do not purport to show on their face that these

rates represent the per capita cost of maintenance of a patient at the state hospital at Ingleside, Nebraska. There is no other evidence in the record bearing upon per capita cost of maintenance except the testimony of the witness Sandritter, and his fixation of cost is not based on anything from which an inference of cost could be reasonably inferred. As he testified his fixation depended upon a rate of charge made by the Board of Control.

That there was foundation for the admission of these exhibits as proof of action by the Board of Control there can be little doubt. They were sufficient as certified copies of proceedings of the Board of Control and were admissible under section 25-1279, R. R. S. 1943, as follows: "Duly certified copies of all records and entries or papers belonging to any public office, or by authority of law filed to be kept therein, shall be evidence in all cases of equal credibility with the original records or papers so filed."

We think also that pursuant to statute the exhibits were competent as evidence of action taken by the Board of Control to the extent that action was outlined in the exhibits.

Section 25-12,108, R. S. Supp., 1953, which is a part of the Uniform Business Records as Evidence Act, provides: "The term 'business' shall include every kind of business, profession, occupation, calling, or operation of institutions, whether carried on for profit or not."

Section 25-12,109, R. S. Supp., 1953, provides: "A record of an act, condition, or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition, or event, and if, in the opinion of the court, the sources of information, method, and time of preparation were such as to justify its admission."

We think that these exhibits were business records

and under the prescribed restrictions they were admissible as such.

The exhibits complied with the provisions of statute requiring the Board of Control to fix the amount to be charged to the spouse of an inmate. They did not by recital or otherwise state that the amount so fixed was equal to the per capita cost of maintaining the patient in the hospital.

We think however that in the light of the statutes it must be presumed that the Board of Control fixed the rate of charge with reference to the per capita cost notwithstanding no such mention was made. The rule in this connection is stated as follows in 31 C. J. S., Evidence, § 146, p. 799: "In the absence of evidence to the contrary, there is always a presumption that official acts, including ministerial acts, or duties have been properly performed, * * *."

This court said in Majerus v. School District, 139 Neb. 823, 299 N. W. 178: "The law presumes official acts of public officers, in a collateral attack thereon, to have been done rightly, and with authority, in the absence of evidence to the contrary, and, in such a collateral attack, acts done, which presuppose the existence of other acts to make them legally effective, are presumptive proof of the existence of such other acts." See, also, State ex rel. Campbell v. Slavik, 144 Neb. 633, 14 N. W. 2d 186.

In the case at bar there was no competent evidence adduced or offered the effect of which was to overcome the presumption that the Board of Control in fixing the rates did so with reference to its statutory duty to do so on the basis of the per capita costs of maintenance.

The objection therefore that there was an absence of proof to sustain the rate of charge against the defendant is without substantial merit.

Accordingly the judgment of the district court is affirmed.

AFFIRMED.