580 F.Supp. 35 (1984)
UNITED STATES of America, Plaintiff,
v.
MISSOURI FARMERS ASSOCIATES, INC., Defendant,
v.
Edward V. STOOPS, Jr., et al., Third-Party Defendants.
No. 83-860C(B).
United States District Court, E.D. Missouri, E.D.
February 3, 1984.
*36 Joseph B. Moore, Asst. U.S. Atty., St. Louis, Mo., for plaintiff.
Wayne Hoecker, Kansas City, Mo., Dale Rollings, St. Charles, Mo., David A. Lander, St. Louis, Mo., Dale Reesman, Boonville, Mo., for defendant.

MEMORANDUM AND ORDER
REGAN, District Judge.
In the case before us the United States seeks to recover $32,014.90 from the Missouri Farmers Association (MFA) for crops purchased from Edward Stoops which were subject to a security agreement in favor of the Farmers Home Administration (FmHA). MFA, as third-party plaintiff, asserts a claim for indemnification against Edward Stoops, third-party defendant.
Prior to trial the parties stipulated that Edward Stoops and his wife Barbara operated a farm in Chariton, Missouri. From February 1978 through April 1979 they received $70,630.00 in loans from the FmHA, with an outstanding balance of $67,926.00 on the date of trial. As part of the loan agreement, Edward and Barbara Stoops executed financial statements covering their crops and other farm equipment and filed these statements in the Chariton County Recorder's Office. In 1979 and 1980, the Stoops' financial condition worsened and they defaulted on their notes. During the period from March 1, 1980 through July 1, 1980, MFA purchased crops covered by the financing statements from Edward Stoops for $32,014.90. None of these sale proceeds were paid to plaintiff.
As a defense to plaintiff's allegations of conversion, MFA contends that FmHA did not have an enforceable security interest in Stoops' crops since there was no granting clause in the security agreement between Stoops and FmHA. The parties stipulated that the security agreement, which was executed on a standardized FmHA form, did not contain specific words granting plaintiff a security interest in Stoops' crops. Contrary to defendants' assertions, however, no precise words are required by the Uniform Commercial Code to create an enforceable security interest.
Section 400.9-203(1)(b) Mo.Rev.Stat. and the official comments to that section make it clear that the only requirements needed to create an enforceable security interest are: 1) a writing; 2) the debtor's signature; and 3) a description of the land where the crops are located. The document signed by the Stoops clearly states on its face that it is a security agreement and it is replete with references to the "security agreement" between the "Secured Party" (FmHA) and the "Debtor" (Stoops). Moreover, the agreement describes in detail the equipment covered by the security agreement and the land where the crops are located. The liberal requirements of the Code for creating an enforceable security interest have been met. Accordingly, we hold that there was an enforceable security interest in the crops purchased by MFA.
MFA further contends that FmHA waived any security interest it had in Stoops' crops by implicitly authorizing the sales to MFA. To support this defense MFA outlines a course of conduct between Stoops and FmHA dating back several years whereby Stoops would sell his crops without the written authorization required by the security agreement and then FmHA would approve these sales "after-the-fact" by accepting the proceeds of the sale. This "after-the-fact" approval, according to MFA, amounts to a waiver of the security interest in Stoops' crops.
We note initially that the evidence MFA produced at trial outlined a series of *37 unauthorized sales by Stoops and "after-the-fact" approvals by FmHA. However, of all the specific instances where Stoops obtained "after-the-fact" approval from FmHA, MFA was never a buyer of the farm products or equipment in question. Consequently, MFA cannot now contend that FmHA waived its security interest in the crops MFA purchased from Stoops.
Moreover, MFA cites no Missouri cases, and we know of none, which supports the waiver defense MFA proffers. The undisputed evidence shows that FmHA never provided Stoops with written consent to sell the crops as required by the security agreement and that Stoops never paid the proceeds of the sale to FmHA. MFA's defense that the government released its lien by "after-the-fact" approvals is unsound because under Missouri law a conversion occurred each time the crops were sold without written authorization, but the agency waived liability by accepting the proceeds of the sale. U.S. v. Gallatin Livestock Auction, Inc., 448 F.Supp. 616 (W.D.Mo.1978), affirmed 589 F.2d 353 (8 Cir.1978).[1] Accordingly, we hold that the government did not release its lien on Stoops' crops, and consequently defendant is liable to plaintiff in the amount of $32,014.90.
Still remaining is MFA's claim against Stoops for indemnification. MFA's third-party complaint states that Stoops had a duty to inform MFA of any lien on his crops, that Stoops breached this duty and that Stoops' failure to inform MFA was wilful and intended to mislead MFA. Stoops, however, was precluded from presenting any evidence at trial because he failed to comply with pre-trial orders and MFA neglected to proffer any evidence in support of its claim against Stoops. Consequently, MFA did not sustain its burden of proof on its claim against Stoops, so we hereby find in favor of third-party defendant Stoops on MFA's claim.
The foregoing memorandum constitutes our findings of fact and conclusions of law. Judgment will be entered in accordance herewith.
NOTES
[1] We also note that while Missouri law applies to this transaction, federal regulations governing the release of FmHA liens are narrowly drawn to maintain the government's security interest in the proceeds from the sale of the collateral. See 7 C.F.R. § 1962.17(b) (1983).