# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 06-6059WD

_____

In re: Andy Lee & Kerri Lynn Sutton      *

     Debtors      *

     *

J. Kevin Checkett, Trustee      *      Appeal from the United States

     Appellant      *      Bankruptcy Court for the

     *      Western District of Missouri

     *

     *

     v.      *

     *

Andy Lee & Kerri Lynn Sutton,      *

     Appellees      *

_____

Submitted: January 25, 2007
Filed: March 16, 2007

_____

KRESSEL, Chief Judge, MAHONEY and McDONALD, Bankruptcy Judges

McDONALD, Bankruptcy Judge

Chapter 7 Trustee, J. Kevin Checkett, appeals from the order of the bankruptcy court[1] overruling Trustee's objection to Debtors' claim of exemption of the full market value of a 1999 Dodge Truck. We affirm.

I.

Debtors, Andy and Kerri Sutton, purchased a 1999 Dodge Truck (the "Vehicle). Jimmy Richardson, the father of Kerri, loaned Debtors $7,000.00 to finance Debtors' purchase of the Vehicle. (the "Loan"). Debtors did not execute a written promissory note in favor of Richardson outlining their obligation under the Loan. In fact, there are no written documents memorializing the parties' rights and obligations with respect to the Loan. Additionally, Richardson testified at trial that the parties never intended to create a lien in his favor to secure Debtors' obligations under the Loan.

The car dealer inquired of Debtors if someone had loaned them the cash to purchase the Vehicle and Debtors informed the dealer of the Loan. The car dealer then suggested that Debtors note Richardson as a lien holder on the application for title on the Vehicle. (the "Application for Title"). Kerri testified at trial that she agreed to note her dad as a lien holder on the Application for Title so that he would have a "say so" if they ever wanted to sell the Vehicle.

Debtors filed a petition for relief under Chapter 7 of the Bankruptcy Code on October 14, 2005. Debtors claimed the entire fair market value of the Vehicle, $7,500.00, as exempt under Mo. Rev. Stat. §§513.430(5) & 513.440. Debtors also listed Richardson as a secured creditor on their Schedule D with a claim of

---

[1] The Honorable Arthur B. Federman, United States Bankruptcy Judge for the Western District of Missouri.

$6,800.00, which was the balance on the Loan. Sometime post-petition Debtors sold the Vehicle and Richardson released whatever interest he may have had in the Vehicle so that the sale could close.

Trustee filed an action to avoid Richardson's interest in the Vehicle under Trustee's strong-arm powers contained in 11 U.S.C. §544(a). Richardson did not dispute the substantive allegations in Trustee's complaint and conceded that he did not have a security interest in the Vehicle.

Trustee also filed an objection to Debtors' claim of exemption of the entire value of the Vehicle. Trustee argued in his objection that Debtors could not exempt the Vehicle under 11 U.S.C. §522(g)(1), which prevents a debtor from exempting property in which the debtor made a pre-petition voluntary transfer that the trustee later avoids.

The bankruptcy court entered judgment in favor of Trustee on his action under §544(a), but overruled his objection to Debtors' exemption of the Vehicle in two separate orders dated July 21, 2006. In the order entering judgment in favor of Trustee on his §544(a) action, the bankruptcy court found that because Debtors had not authenticated a written security agreement in favor of Richardson as required by Missouri's version of Article 9, Mo. Rev. Stat. §400.9-203(b), Richardson did not possess an interest in the Vehicle.

The bankruptcy court held in its order overruling Trustee's objection that because Debtors did not execute a valid security agreement in favor of Richardson, they did not make a pre-petition voluntary transfer of an interest in the Vehicle to him. The bankruptcy court, therefore, found that §522(g)(1)(A) was inapplicable and that Debtors could exempt the full market value of the Vehicle under Missouri law and overruled Trustee's objection.

Trustee then filed a motion with the bankruptcy court to amend or alter its judgment overruling Trustee's objection under Bankr. R. 9023. Trustee argued in his motion to amend that Debtors authenticated a valid security agreement in favor of Richardson when they noted him as the lien holder on the Application for Title. Trustee asserted that because Debtors did transfer an interest in the Vehicle to Richardson, §522(g)(1)(A) did apply to prevent Debtors from exempting the value of Richardson's putative interest in the Vehicle, which was $6,800.00.

The bankruptcy court rejected Trustee's argument, holding that a notation that the creditor is a lien holder on an application for title is not a security agreement under Missouri's version of Article 9. The bankruptcy court, therefore, reiterated its earlier finding that Debtors did not make a voluntary transfer of an interest in the Vehicle to Richardson and that §522(g)(1)(A) was inapplicable and denied Trustee's motion to alter or amend its judgment in an order dated August 14, 2006.

Trustee filed his notice of appeal on August 23, 2006. The notice of appeal only identifies the bankruptcy court's order denying Trustee's objection to Debtors' claim of exemption and the subsequent order denying Trustee's motion to alter or amend the judgment. The bankruptcy court, however, expressly premised its order overruling Trustee's objection on its finding in the adversary proceeding that Debtors did not convey an Article 9 security interest in the Vehicle to Richardson. The notice of appeal, therefore, preserved both the exemption issue and the Article 9 issue for appellate review. See Greer v. St. Louis Reg. Med. Ctr., 258 F.3d 843, 846 (8th Cir. 2001).

II.

We review the bankruptcy court's findings of fact for clear error and its conclusion of law *de novo*.  Bankr. R. 8013; In re Neal, 461 F.3d 1048, 1052 (8th Cir. 2006).  The bankruptcy court's finding that the Application for Title does not meet the statutory definition of a security agreement under Missouri's version of Article 9 is a question of law that we review *de novo*.  In re Shores, 332 B.R. 31, 34 (M.D. Fla. 2005).  The bankruptcy court's interpretation of §522(g)(1)(A) that the statute only applies if the debtor made a voluntary transfer of an interest in the property in question is also a question of law that we review *de novo*.  Neal, 461 F.3d at 1052.

III.

*A.  Introduction*

The issue before us is whether §522(g)(1) applies so that Debtors may not exempt the entire value of the Vehicle.  Section 522(g)(1) provides in relevant part that:

> Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if--
>
> (1)(A) such transfer was not a voluntary transfer of such property by the debtor...

Relevant to the issue in dispute here, §522(g)(1)(A) prohibits a debtor from exempting property to the extent that the trustee recovers the debtor's voluntary

transfer of an interest in that property for the benefit of the estate. <u>Kaler v. Overboe (In re Arzt)</u>, 252 B.R. 138, 141-42 (B.A.P. 8th Cir. 2000). We find that the bankruptcy court correctly held that Debtors did not voluntarily transfer an interest in the Vehicle to Richardson so that §522(g)(1)(A) is inapplicable for the following reasons.

*B. Debtors did not transfer an interest in the Vehicle to Richardson under Article 9 of the Uniform Commercial Code.*

The question of whether Debtors transferred an interest in the Vehicle to Richardson is governed by state law. <u>Moon v. Anderson (In re Hixon)</u>, 387 F.3d 695, 700 (8th Cir. 2004). Therefore, we look to Missouri law to determine if Debtors made a pre-petition transfer of an interest in the Vehicle to Richardson.

Trustee first contends that Debtors granted a security interest in the Vehicle to Richardson under Missouri's version of Article 9 of the Uniform Commercial Code by noting Richardson as the lien holder on the Application for Title. Under Missouri's version of Revised Article 9 a creditor's security interest attaches to the collateral if: (1) the creditor has given value; (2) the debtor has rights in the collateral; and (3) the debtor has authenticated a security agreement that provides a description of the collateral.[2] Mo. Rev. Stat. §400.9-203(b)(1)-(3). Unless the creditor's interest has attached to the collateral, the creditor has no enforceable interest in the collateral . Mo. Rev. Stat. §400.9-203(a); <u>Gassaway v. Erwin (In re Shelton)</u>, 472 F.2d 1118, 1121 (8th Cir. 1973).

---

[2] The Missouri Legislature adopted the Revised Version of Article 9 effective July 1, 2001. Because all of the relevant transactions in dispute here occurred after July 1,2001, the substantive provisions of Revised Article 9 apply. Mo. Rev. Stat. §400.9-702(a).

There is no dispute that Richardson gave value and that Debtors had obtained a right in the Vehicle. The only question, therefore, in determining whether Richardson's interest attached to the Vehicle is whether Debtors authenticated a valid security agreement. Trustee maintains that the Application for Title constitutes a valid security agreement under Missouri law. We disagree.

A security agreement is simply defined as an agreement that creates a security interest. Mo. Rev. Stat. §400.9-102(a)(72). A security agreement need not be denominated as such or have any particular form. In re Smith, 167 B.R. 895, 897 (Bankr. E.D. Mo. 1994). All that is required under Article 9 for a document to be a security agreement is an objective manifestation in the language of the document of the debtor's agreement to grant a security interest in the collateral in favor of the creditor. United States v. Mo. Farmers Assoc., 580 F.Supp. 35, 37 (E.D. Mo. 1984) aff'd. 764 F.2d 488 (8th Cir. 1985) cert. denied 475 U.S. 1053 (1986); See also Mo. Rev. Stat. §400.9-102 cmt. 3.b.

Although there is a split of authority on the issue, the Eighth Circuit has held that under the prior version of Article 9, a notation on an application for title that a creditor holds a lien on the vehicle does not meet the statutory definition of a security agreement under Missouri law. Shelton, 472 F.2d at 1120. Rather, such a notation is merely evidence of the creation of a security interest instead of the agreement itself. Id. Thus, as we have previously held, an application for title with the creditor denoted as a lien holder, by itself, is not a security agreement under Article 9. Forker v. Duenow Manag. Co. (In re Calvert), 227 B.R. 153, 160-61 (B.A.P. 8th Cir. 1998) (interpreting similar provision under Nebraska law).

The only written document signed by Debtors with respect to Richardson's interest in the Vehicle was the Application for Title. As just discussed above, that document standing alone does not meet the statutory definition of a security agreement under Shelton and its progeny. Shelton, 472 F.2d at 1120; Forker, 227 B.R. at 161.

Trustee argues that despite Shelton, the Application for Title meets the definition of a security agreement under §400.9-102(a)(72) for two reasons. Trustee first maintains that Shelton is no longer valid under Revised Article 9. Trustee specifically points to Comment 3.b to Revised §9-102 in support of his position. Comment 3.b recites in relevant part that a court must utilize an objective test of the text of the document, instead of the parties' subjective intent, to determine if that document is a security agreement.

The statutory definition of a security agreement contained in Revised §9-102(a)(72), however, is not a departure from the definition of a security agreement under Prior Article 9. Under Missouri's version of Prior Article 9, courts applied an objective test to the document in question to determine if the document contains sufficient language to evidence the debtor's agreement to grant a security interest in the collateral to the creditor . See e.g. Mo. Farmers Assoc., 580 F.Supp. at 37. In fact, the Eighth Circuit noted in Shelton that although the evidence established that the parties subjectively intended to create a security interest in favor of the creditor, an objective examination of the relevant documents did not establish that they ever reached such an agreement. Shelton, 472 F.2d at 1120-21. Thus, the Shelton Court itself applied an objective test, consistent with Comment 3.b to Revised §9-102, in determining whether the relevant documents constituted a security agreement under Article 9.

Trustee additionally contends that even if Revised Article 9 did not change the substantive analysis of what constitutes a security agreement from Prior Article 9, Shelton still should not be followed because it erroneously interpreted Missouri law. Trustee specifically argues that an opinion by the Missouri Court of Appeals, Bradley v. K&E Investments, Inc., 847 S.W.2d 915 (Mo. Ct. App. 1993), supports his argument that an application for title that denotes a creditor as a lien holder meets the statutory definition of a security agreement under Mo. Rev. Stat. §400.9-102(a)(72).

The court in <u>Bradley</u> held that the document in question was not a security agreement because it did not contain any language normally associated with a secured transaction such as the term "lien". <u>Id</u>. at 921–22. But the <u>Bradley</u> court also cited <u>Shelton</u> in holding that the document in question must actually contain some language that evidences the debtor's agreement to convey some interest to the creditor in order for the document to be a security agreement. <u>Id</u>. at 922. Thus, <u>Bradley</u> actually reinforces the holding in <u>Shelton</u> that under Missouri's version of Article 9, a document must contain some language that evidences the debtor's agreement to convey an interest in the collateral in order to be a security agreement.

There is nothing in the text or comments of Revised Article 9 that warrants a rejection of the Eighth Circuit's holding in <u>Shelton</u> that a notation on an application for title that a creditor is a lien holder is not, by itself, a security agreement. The Application for Title, therefore, is not a security agreement under Mo. Rev. Stat. §400.9-102(a)(72). Thus, Debtors did not authenticate a security agreement with respect to the Vehicle in favor of Richardson as required by Mo. Rev. Stat. §400.9-203(b)(3) and the bankruptcy court correctly found that Debtors did not transfer an interest in the Vehicle to Richardson under Article 9.

*C. Debtors did not transfer an interest in the Vehicle to Richardson outside of Article 9.*

Trustee next argues that §522(g)(1)(A) is applicable even if Debtors did not transfer an interest in the Vehicle to Richardson under Article 9 because Debtors transferred an interest under Missouri law outside of Article 9. Trustee points to two sources of law that he contends gave Richardson an interest in the Vehicle. First, Trustee contends that Mo. Rev. Stat. §301.215 gave Richardson standing to bring a judicial foreclosure proceeding with respect to the Vehicle.

Section 301.215, however, only gives a creditor who has a security interest in the vehicle the right to seek a new certificate of title after it has repossessed the vehicle. Here, because Richardson did not have an enforceable security interest in the Vehicle, §301.215 does not give him the ability to obtain a new certificate of title. Thus, Debtors did not transfer an interest in the Vehicle to Richardson under §301.215 by simply denoting him as a lien holder on the Application for Title.

Trustee additionally maintains that Debtors gave Richardson an interest in the Vehicle by denoting him as a lien holder because, as a practical matter, such a notation gave Richardson some control over Debtors' disposition of the Vehicle. While it is true that a prudent buyer of a vehicle will require the consent of any person denoted as lien holder before closing on the transaction, Missouri law clearly provides that a creditor has no substantive rights in a vehicle unless the creditor's security interest attaches to the vehicle under Article 9. Bradley, 847 S.W.2d at 921. Thus, if a creditor does not have a security interest in a vehicle under Article 9, the creditor does not have an enforceable property interest in the vehicle. Id.; Forker, 227 B.R. at 161.

*D. Section 522(g)(1) has no application where the debtor did not voluntarily transfer an interest in the property in question.*

Trustee finally argues that because he took an affirmative step in filing his action under §544(a) that resulted in the bankruptcy court's finding that Richardson did not have an interest in the Vehicle, the provisions of §522(g)(1)(A) are still applicable. Trustee relies on In re Ulrich, 203 B.R. 691 (Bankr. C.D. Ill. 1997) in support of this argument.

In Ulrich, the trustee filed an action to avoid a bank's claimed security interest in the vehicle in question. Like the instant case, the debtors did not execute a written security agreement with respect to the car in dispute, but rather

only denoted the creditor's lien on the application for title.  The court first found that under Illinois law, a note on an application for title that a lien exists in favor of the creditor is sufficient to create a valid security interest even in the absence of a written security agreement.  Id. at 693.  The court then noted in *dicta* that even if the creditor did not have a valid Article 9 security interest in the vehicle, §522(g)(1)(A) would still apply to prevent the debtors from exempting the vehicle because the trustee took an affirmative step to nullify the bank's putative lien on the vehicle.  Id.

While it is true that the above referenced *dicta* in Ulrich supports Trustee's position here, the Ulrich court's interpretation of §522(g)(1)(A) is inconsistent with the text of the statute. The plain language of §522(g)(1)(A) recites that the section applies only with respect to property in which the debtor made a voluntary transfer that the trustee recovers for the benefit of the estate.  That analysis must begin with the question of whether the debtor voluntarily transferred an interest in the property.  See Armstrong v. Harris (In re Harris), 886 F.2d 1011, 1015 (8th Cir. 1989); Arzt, 252 B.R. at 142-43.  If the debtor did not make a voluntary transfer of an interest in the property in question, §522(g)(1)(A) has no application.

Because the *dicta* in Ulrich focuses only on the trustee's action and not on whether the debtor voluntarily transferred an interest in the property, we find that the Ulrich court's *dicta* is inconsistent with the text of §522(g)(1)(A).  We, therefore, decline to follow the *dicta* of the Ulrich court.

IV.

The Application for Title, by itself, is not a security agreement under Mo. Rev. Stat. §400.9-102(a)(72).  Debtors, therefore, did not authenticate a security agreement in favor of Richardson with respect to the Vehicle under Mo. Rev. Stat. §400.9-203(b)(3) and the bankruptcy court correctly determined that Debtors did

not make a voluntary transfer of an interest in the Vehicle to Richardson. Accordingly, §522(g)(1)(A) is inapplicable and Debtors could utilize the applicable Missouri exemption to exempt the full value of the Vehicle. Thus, we affirm the judgment of the bankruptcy court finding that Debtor may exempt the full value of the Vehicle.

Kressel, Chief Judge, concurring.

While I think the majority is correctly affirming the bankruptcy court's order overruling the trustee's objection to the debtors' exemption claim, the majority opinion ranges outside the issues properly raised by the appeal of that order and I think thereby exceeds our jurisdiction. As the majority opinion indicates, the trustee was engaged in two related, but separate, proceedings. The trustee filed an adversary proceeding against Kerri's father, in which he sought to avoid a security interest that he held in the debtors' car. In its order and judgment, the bankruptcy court did not grant the trustee the relief he sought, but rather, held, by way of declaratory judgment, that Kerri's father did not have a valid lien on the car. The trustee did not appeal from that judgment.

Going on at the same time was the trustee's objection to the debtors' claim of exemption in their car. In his objection, the trustee relied on § 522(g) which allows a debtor to exempt property recovered by the trustee under §§ 510(c)(2), 542, 543, 550, 551, or 553, but only to the extent the transfer of the property recovered was not voluntary and the debtor did not conceal it. In an order dated the same day as the judgment in the adversary proceeding, the bankruptcy court correctly pointed out that it had held in the adversary proceeding that Kerri's father held no lien in the car and therefore the trustee did not avoid any lien nor recover the car or its value under any of the denominated sections. As a result, the debtors were entitled to claim the car exempt. It is from that order that the trustee appealed.

In its opinion, the majority does a thorough job of discussing and deciding the issues raised in the adversary proceeding. While I do not necessarily disagree with any of the majority's analysis, because the bankruptcy court's judgment in the adversary proceeding was not appealed, I think that it is unnecessary and outside the proper scope of our review. "[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *First Union Nat'l Bank v. Pictet Overseas Trust Corp., Ltd.*, No. 05-2932, 2007 WL 136043, at *2 (8th Cir. Jan. 22, 2007) (quoting *Morris v. American Nat'l Can Corp.*, 988 F.2d 50, 52 (8th Cir. 1993)). "The doctrine applies to appellate decisions." *Id.* "The law of the case doctrine prevents the relitigation of a settled issue in a case and requires courts to adhere to decisions made in earlier proceedings in order to ensure uniformity of decisions, protect the expectations of the parties, and promote judicial economy." *United States v. Bartsh*, 69 F.3d 864, 866 (8th Cir. 1995). In short, the bankruptcy court was required to adhere to its decision in the adversary proceeding when it faced the same issue in the exemption litigation. While the bankruptcy court did discuss the issue somewhat again as part of its decision in the exemption litigation, it did not purport to relitigate or redecide an issue that it had already decided in the adversary proceeding. Thus, it should have been a simple matter in this appeal for us to refer to the judgment in the adversary proceeding, which indicated that Kerri's father had no lien, which meant there was no avoidance or recovery and therefore § 522(g) has no applicability. In this respect, the majority's discussion about the law of creation and perfection of security interest, although excellent, is dictum at best.

In the same vein, since the trustee was a party to the adversary proceeding, principles of collateral estoppel would prevent him from relitigating those same issues in the exemption litigation or as part of this appeal.

I therefore join the majority, but for somewhat different reasons.

---