FILED

FEB 13 2017

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

In re:                              )    BAP No.   NV-16-1218-JuFY
                                    )
STEVEN JOHN WHARTON and             )    Bk. No.   2:14-bk-18455-ABL
JOSEPHINA JESSIE WHARTON,           )
                                    )
                  Debtors.          )
_____)
                                    )
STEVEN JOHN WHARTON;                )
JOSEPHINA JESSIE WHARTON,           )
                                    )
                  Appellants,       )
                                    )
v.                                  )    **O P I N I O N**
                                    )
LENARD SCHWARTZER, Chapter 7        )
Trustee,                            )
                  Appellee.         )
_____)

Submitted without oral argument
on January 19, 2017[*]

Filed - February 13, 2017

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable August B. Landis, Bankruptcy Judge, Presiding
_____

Appearances:   Appellants Steven John Warton & Josephina Jessie
               Wharton on brief pro se; Jason A. Imes on brief
               for appellee, Lenard Schwartzer, chapter 7
               trustee.
               _____

Before:  JURY, FARIS, and YUN,[**] Bankruptcy Judges.

_____

[*] By order entered on November 7, 2016, a motions panel determined that this appeal was suitable for submission on the briefs and record without oral argument pursuant to Fed. R. Bankr. P. 8019.

[**] Hon. Scott H. Yun, United States Bankruptcy Judge for the Central District of California, sitting by designation.

JURY, Bankruptcy Judge:

Chapter 7[1] debtors, Steven John Wharton and Josephina Jessie Wharton (collectively, Debtors), listed a 1965 Corvette as a nonexempt asset in their initial schedules and showed that Steven's brother, Robert Wharton (Robert), held a nonpurchase money security interest in the vehicle. However, Robert's security interest in the vehicle was not perfected under Nevada law. Accordingly, the chapter 7 trustee, Lenard Schwartzer (Trustee), sought turnover of the vehicle.

Debtors negotiated with Trustee to purchase the Corvette, but these negotiations broke down over price and terms of payment. Trustee filed a motion to compel turnover. Debtors then amended their Schedules B and C to claim an exemption in the full value of the Corvette, which was appraised at $23,000. Trustee objected to the exemption in his reply brief to the turnover motion, but never filed a formal objection to the exemption. Debtors claimed that Trustee's objection raised in the reply was improper and thus no timely objection to their exemption had been made.

After further briefing, the bankruptcy court decided the matter on the basis of stipulated facts presented by the parties. The court sustained Trustee's objection to Debtors' claimed exemption in the Corvette under § 522(g)(1)(A), granted

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and "Rule" references are to the Federal Rules of Bankruptcy Procedure.

Trustee's motion for turnover, and entered an order consistent with its ruling. Debtors appeal from that order. For the reasons set forth below, we AFFIRM.

## I. FACTS[2]

Debtors owned a 1965 Corvette. In July 2011, Steven borrowed $80,000 from Robert. The loan was evidenced by a promissory note signed by Steven and which stated, among other things, that the note was partially secured by the Corvette. In connection with the loan, Steven gave Robert the original title certificate and keys to the vehicle but retained physical possession. Throughout the relevant dates, Steven was listed as the owner on the Corvette's title certificate.

Debtors filed their chapter 7 petition on December 30, 2014. Trustee was appointed to administer their bankruptcy estate. Debtors listed the Corvette in their initial schedules as a nonexempt asset with a value of $63,800 and showed that Robert held a nonpurchase money security interest on the vehicle.

On March 26, 2015, Robert filed a proof of claim (POC) for $45,000, showing $40,000 secured by the Corvette with the remainder unsecured.

Trustee later determined that Robert had not perfected his security interest in the Corvette prepetition under Nevada law because his security interest neither appeared on the state-

---

[2] Many of the facts are taken from the Stipulated Facts Re Motion to Compel Turnover. To the extent necessary, we take judicial notice of the pleadings filed in the underlying bankruptcy case. Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

issued certificate of title nor was he listed as a lienholder. Because the vehicle was in Steven's name and had not been claimed as exempt, Trustee demanded turnover of the Corvette for the benefit of the estate and creditors.

Robert amended his POC to include a copy of the promissory note and cancelled check for the initial loan to Steven. However, he provided no documents that showed his security interest in the Corvette was properly perfected under Nevada law.

During negotiations with Trustee over the Corvette, Debtors had the vehicle appraised by CarMax in Bakersfield, California. CarMax provided an "appraisal offer" of $23,000, and Debtors provided this offer to Trustee. Trustee agreed that Debtors could pay the amount of the appraised value less the 20% commission that it would cost him to sell the vehicle at auction, resulting in a total price of $18,400, with payments made over twelve months. The negotiations later broke down over the price and terms of payment.

As a result, Trustee filed a motion to compel turnover of the Corvette (Turnover Motion), asserting that the vehicle was property of the estate and that Robert's lien was unperfected. Trustee informed the bankruptcy court that he had demanded turnover of the Corvette or payment of its value by emails and a letter but that Debtors failed to cooperate.

Two weeks before the scheduled hearing on the Turnover Motion, Debtors filed amended Schedules B and C listing the vehicle's value at $23,000 based on the CarMax appraisal and listing an exemption of this entire value under Nevada Revised

Statute (NRS) 21.090(1)(f).[3] Debtors did not amend Schedule D which showed that Robert held a secured interest in the vehicle.

Debtors also responded to the Turnover Motion, asserting that they did not initially claim an exemption in the vehicle because they believed that it was subject to a valid security interest. They further stated that once the negotiations with Trustee ended, they amended their schedules to reflect the exemption in the Corvette.

In a subsequent reply, Trustee asserted that he could avoid Robert's unperfected lien under §§ 544 and 550. He further argued that Debtors could not exempt the Corvette based on the provisions of § 522(g)(1)(A) because they had voluntarily transferred a security interest to Robert, citing In re Bub, 528 B.R. 555 (Bankr. E.D.N.Y. 2015), and Glass v. Hitt (In re Glass), 60 F.3d 565, 569 (9th Cir. 1995), in support.[4]

Debtors responded to the reply, arguing that there was no transfer of the vehicle but only transfer of the title and the keys. Therefore, according to Debtors, Trustee had not "recovered" the vehicle from a third party since it was always in Debtors' possession. Debtors also pointed out that there was no attempt to defraud or mislead the bankruptcy court as the

---

[3] This subsection allows an exemption in one vehicle if the judgment debtor's equity does not exceed $15,000 or the creditor is paid an amount equal to any excess above that equity.

[4] Glass stands for the proposition that the trustee "recovers" property within the meaning of § 522(g) so long as the trustee has taken some action resulting in the reconveyance of the property of the estate. In re Glass, 60 F.3d at 568-69. No formal adversary proceeding is required. Bub cites Glass and other cases which hold the same.

-5-

vehicle had been listed in their schedules.

At the November 19, 2015 hearing on the Turnover Motion, Trustee informed the bankruptcy court that Debtors had claimed an exemption in the vehicle after he filed the motion. As a result, Trustee suggested continuing the matter "about 30 days and - or maybe 45 days," and stated: "I will file a[n] objection to the claim of exemption that could be heard at the same time as a motion to -- for turnover of the vehicle." The bankruptcy court set the matter for a January 6, 2016 status conference on Judge Landis's calendar[5] since he was assigned the case and an evidentiary hearing was required.

On January 11, 2016, the bankruptcy court scheduled the matter for an evidentiary hearing on May 2, 2016. At the May 2, 2016 hearing, the parties advised the court that they had agreed to submit the matter on the basis of stipulated facts. The next day, the bankruptcy court entered an order setting May 9, 2016, as the deadline for filing the stipulation regarding the evidentiary record and closing the record as of that date. The court also set further dates for the parties to file their post-hearing briefs.

The parties filed the stipulated facts as required. Trustee filed his post-hearing brief on May 16, 2016. Trustee argued that he raised a timely and sufficient objection to Debtors' claimed exemption in the Corvette under Rule 4003; i.e., Debtors amended their schedules to claim the exemption on

---

[5] The November 19, 2015 hearing was before Judge Davis, who as duty judge heard a status conference calendar of motions in cases assigned to all judges in the division.

November 5, 2015, and he objected to the exemption on November 12, 2015, in his reply brief to the Turnover Motion. Accordingly, Trustee maintained that his objection was within 30 days of Debtors' amended Schedule C. Trustee further argued that his objection satisfied Rule 4003, which does not require any particular form for an objection to an exemption under the holding in Spenler v. Siegel (In re Spenler), 212 B.R. 625, 629 (9th Cir. BAP 1997). According to Trustee, all that Rule 4003 requires is notice of Trustee's objection and its basis, which must be raised within the applicable time period. Finally, Trustee asserted that Debtors admitted in the stipulated facts that they voluntarily transferred a security interest in the vehicle to Robert. Under these circumstances, Trustee argued that § 522(g)(1)(A) prevented them from claiming the Corvette as exempt.

Debtors filed their post-hearing brief on May 23, 2016. Debtors asserted that Trustee had failed to file a timely objection to their exemption and that at no time during the November 19, 2015 hearing did the bankruptcy court acknowledge that Trustee's reply brief was an objection to Debtors' exemption. They further argued that at the November 19th hearing, Trustee was directed to file and place on calendar an objection within 45 days. Debtors also pointed out that the facts in Spenler were distinguishable from those here. In Spenler, the trustee had filed a document entitled "Trustee's Objection to the Two Individual Retirement Accounts Claimed as Exempt by Debtor" within the 30 day period under Rule 4003. In contrast, Trustee filed no pleading expressly objecting to

-7-

Debtors' claim of exemption in this case.

Debtors further asserted that § 522(g)(1)(A) was not applicable as there was no transfer of a security interest in the Corvette. According to Debtors, no transfer occurred because the promissory note did not contain a sufficient description of the collateral - a requirement for attachment under NRS 104.9203. For this argument, Debtors relied on the reasoning in Checkett v. Sutton (In re Sutton), 365 B.R. 900 (8th Cir. BAP 2007), In re Seibold, 351 B.R. 741 (Bankr. D. Idaho 2006), and In re Dolven, 549 B.R. 386 (Bankr. D. Idaho 2016). Finally, Debtors contended that at all times they were acting honestly and simply availed themselves of the exemption provided to them under Nevada law.

On May 27, 2016, Trustee filed a response which reiterated his previous arguments; i.e., his objection to Debtors' exemption set forth in his reply brief was sufficient to meet the requirements of Rule 4003 and § 522(g) applied.

On June 30, 2016, the bankruptcy court issued its oral ruling. First, the court found that Trustee's reply brief in support of the Turnover Motion was sufficient to constitute a timely objection to Debtors' claim of exemption in the Corvette under the holding in Spenler. Next, the bankruptcy court sustained Trustee's objection to Debtors' claimed exemption in the Corvette under § 522(g). According to the court, the agreement between Steven and his brother showed the loan was secured by the value of the Corvette. The bankruptcy court also found that a transfer of the security interest occurred because Debtors gave the title and keys to Robert. The court further

-8-

noted that Debtors had stipulated that the transfer was voluntary. Finally, the bankruptcy court held that Trustee had recovered the vehicle under §§ 544 and 550 for the benefit of the estate through his actions since Debtors represented that Robert had released his lien. In the end, the bankruptcy court sustained Trustee's objection to the exemption and granted Trustee's Turnover Motion.

On July 6, 2016, the bankruptcy court entered an order consistent with its oral ruling. Debtors timely appealed from that order.

## II. JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), (B) and (E). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

A. Whether the bankruptcy court erred in finding that Trustee timely objected to Debtors' claimed exemption in the Corvette under Rule 4003;

B. Whether the bankruptcy court erred in denying Debtors' claimed exemption in the Corvette under § 522(g)(1)(A); and

C. Whether the bankruptcy court erred in granting Trustee's Turnover Motion.

## IV. STANDARD OF REVIEW

The issues raised in this appeal are subject to de novo review. See In re Spenler, 212 B.R. at 628 (proper application of Rule 4003(b) is a question of law which we review de novo); Hitt v. Glass (In re Glass), 164 B.R. 759, 761 (9th Cir. BAP 1994); Graham Oil Co. v. Gordon C. York, Inc. (In re Kramer), 64

B.R. 531, 532 (9th Cir. BAP 1986) (whether the bankruptcy court correctly applied the law to the stipulated facts is a legal issue subject to de novo review); Gaughan v. Smith (In re Smith), 342 B.R. 801, 805 (9th Cir. BAP 2006) (a debtor's right to claim exemptions is question of law reviewed de novo); Conrad v. Ace Prop. & Cas. Ins. Co., 532 F.3d 1000, 1004 (9th Cir. 2008) (interpretation and meaning of security agreements (contracts) is de novo).

De novo means review is independent, with no deference given to the trial court's conclusion. Charlie Y., Inc. v. Carey (In re Carey), 446 B.R. 384, 389 (9th Cir. BAP 2011) (citing McComish v. Bennett, 611 F.3d 510, 519 (9th Cir. 2010)).

## V.  DISCUSSION

On appeal, Debtors contend that the bankruptcy court erred in granting Trustee's turnover request because the Corvette is an exempt asset.  Their arguments regarding the bankruptcy court's error in denying their exemption essentially mirror those made in the bankruptcy court.  First, Debtors contend that Trustee's objection to their exemption, which was raised for the first time in his reply brief in connection with the Turnover Motion, was not proper.  According to Debtors, Trustee was required to file a separate document objecting to their exemption.  Since the time has passed for doing so, Debtors maintain that the court should have allowed their exemption.  Second, Debtors assert that § 522(g) is not applicable because they disclosed the vehicle in their schedules and only took the exemption after they obtained an appraisal and realized that they had not fully used their vehicle exemption.  We are not

-10-

persuaded by either of these arguments.

**A.  Trustee's objection to Debtors' exemption was timely.**

Rule 4003(b) governs objections to claims of exemption and states in relevant part:

> (1) Except as provided in paragraphs (2) and (3), a party in interest may file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later. The court may, for cause, extend the time for filing objections if, before the time to object expires, a party in interest files a request for an extension.

If no objection is filed within the 30 day period proscribed by Rule 4003(b), the debtor's claimed exemption is valid. <u>Taylor v. Freeland & Kronz</u>, 503 U.S. 638 (1992). <u>Taylor</u> dealt with the timeliness of an objection and not its sufficiency. The panel addressed the sufficiency of an objection in <u>Spenler</u> stating:

> Rule 4003(b) proscribes no particular form for an objection to exemption. Nevertheless the purpose behind Rule 4003(b) is clear. Rule 4003(b) was meant to provide the debtor with timely notice that the trustee or other interested party objects to a debtor's claimed exemption.

212 B.R. at 630.

In support of its reasoning, the <u>Spenler</u> panel cited numerous cases where pleadings were "deemed objections" even though they were not styled as an "objection to exemption." For example, in <u>Havas Leasing Co. v. Breen (In re Breen)</u>, 123 B.R. 357, 360 (9th Cir. BAP 1991), the panel held that a trustee's motion for relief from the stay which in essence objected to the debtors' claim that their truck was exempt as a tool of the trade constituted an objection filed within the 30 day period

for purposes of Rule 4003(b).

In <u>Young v. Adler (In re Young)</u>, 806 F.2d 1303, 1305 (5th Cir. 1987), <u>overruled on other grounds</u> by <u>Canfield v. Orso (In re Orso)</u>, 283 F.3d 686 (5th Cir. 2002), the debtor amended his statement of financial affairs to include an annuity as personal property and claimed it exempt after the trustee had filed a motion arguing that the annuity was part of the estate. The Fifth Circuit found the motion filed by the trustee constituted a timely objection, noting:

> Debtor does not, and surely cannot, complain that he did not have actual notice of Trustee's objections. To allow Debtor to gain refuge behind Rule 4003(b) when he amended his financial statement **in response** to Trustee's objections would be to elevate form over substance. We cannot countenance such a wooden application of the Bankruptcy Rules.

<u>Id.</u> (emphasis in original).

Finally, in <u>Applebee v. Brawn (In re Brawn)</u>, 138 B.R. 327, 333 (Bankr. D. Maine 1992), the debtor asserted a right to a homestead exemption in his motion to avoid the judgment creditors' lien against his homestead property. The judgment creditors filed a response to the motion, stating that the Debtor was not entitled to a homestead exemption. The judgment creditors later filed a pleading styled "Objection to Exemption Claim," which the debtor contended was untimely. The bankruptcy court disagreed, finding that, although the judgment creditors had not filed a distinct objection the first time around, they manifested their intent to contest the debtor's homestead exemption claim and effectively communicated that intent to him and the court well within Rule 4003(b)'s 30-day period.

The holding in <u>Spenler</u> is applicable to this case.

-12-

Although the better practice would have been for Trustee to file a separate pleading styled as an objection to Debtors' exemption, under Spenler he did not need to do so. Trustee set forth the basis for his objection to Debtors' exemption in his reply brief since Debtors had amended their Schedule C claiming the exemption in response to Trustee's Turnover Motion. Trustee's reply was filed within 30 days of Debtors' amending their Schedule C and nowhere do Debtors complain that they did not have notice of Trustee's objection. Nor could they claim no notice when they responded to Trustee's objection to their exemption prior to the November 19, 2015 hearing on Trustee's Turnover Motion.

Finally, although Debtors contend otherwise, the November 19th hearing transcript does not convince us that the rule in Spenler is inapplicable under these circumstances. The hearing was a status conference and no substantive rulings were made. Although Trustee offered to file a separate objection to Debtors' exemption, the bankruptcy court did not order him to do so. Accordingly, we hold that Trustee's objection to Debtors' exemption in the Corvette was timely.

**B.    Since the requirements of § 522(g)(1)(A) were met, Debtors were not entitled to claim an exemption in the Corvette.**

Section 522(g)(1), in relevant part, provides:

[T]he debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—

(1)(A) such transfer was not a voluntary transfer of such property by the debtor; and

-13-

(B) the debtor did not conceal such property . . . .

It is undisputed that Debtors did not conceal the Corvette, so subsection (B) is not at issue. Rather, our analysis centers on whether Debtors' grant of a security interest in the Corvette to Robert, who failed to properly perfect that interest, was in the nature of a voluntary transfer which prevents Debtors from asserting an exemption in the vehicle upon Trustee's recovery of the vehicle for the benefit of the estate. Without either a transfer or recovery, § 522(g)(1)(A) is inapplicable.

## 1.   The Voluntary Transfer Element

Whether Debtors transferred an enforceable security interest in the Corvette to Robert is a matter of Nevada law. See Butner v. United States, 440 U.S. 48, 54–55 (1979); Diamant v. Kasparian (In re S. Cal. Plastics, Inc.), 165 F.3d 1243, 1248 (9th Cir. 1999) (to determine the validity, nature and effect of a lien, courts must look to state law).

Under Nevada law, a "security agreement" is "an agreement that creates or provides for a security interest." NRS 104.9102(uuu). A "security interest," in turn, is "an interest in personal property . . . which secures payment or performance of an obligation. . . ." NRS 104.1201(ii). Under the Uniform Commercial Code (UCC) as enacted in Nevada, a security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral. NRS 104.9203(1). A security interest is enforceable against the debtor and third parties with respect to collateral only if:

(a) Value has been given;

(b) The debtor has rights in the collateral or the

-14-

power to transfer rights in the collateral to a secured party; and

(c) One of the following conditions is met:

(1) the debtor has authenticated a security agreement that provides a description of the collateral . . . .[6]

NRS 104.9203(2). Unless the creditor's interest has attached to the collateral, the creditor has no enforceable interest in the collateral. Debtors have placed only subsection (c)(1) of NRS 104.9203(2) at issue in this appeal. Therefore, we consider whether there is an authenticated security agreement that provides an adequate description of the collateral.

The record shows that Steven signed a promissory note in favor of Robert, dated July 1, 2011, and that a loan for $80,000 was made by Robert to Steven. The last sentence of the note states: "Principal and interest due is to be paid in full by August 1, 2016. This note is partially secured by 1965 Corvette automobile." Accordingly, the promissory note qualifies as a security agreement which by its terms "creates or provides for a security interest." NRS 104.9102(uuu); see also Nolden v. Plant Reclamation (In re Amex-Protein Dev. Corp.), 504 F.2d 1056, 1059-60 (9th Cir. 1974) (finding promissory note qualified as a security agreement). Furthermore, the note was signed by Steven and was therefore authenticated. In re Schwalb, 347 B.R. 726, 745 (Bankr. D. Nev. 2006) ("'[S]igning' is 'authentication' under the UCC . . . ."). In short, the requirement of an authenticated security agreement was met. Debtors do not argue

---

[6] None of the other conditions listed in the statute are relevant in this case.

-15-

otherwise on appeal.

Instead, Debtors state in conclusory fashion that they did not have a security agreement with Robert, but rather only a promissory note which did not contain a proper description of the collateral. Debtors argue that without a proper description of the collateral, Robert's security interest did not attach and therefore was unenforceable. As a result, Debtors contend that they did not make a transfer within the meaning of § 522(g)(1)(A). We disagree with these assertions. As explained below, Debtors did transfer a security interest to Robert under controlling state law.

First, contrary to Trustee's assertion, Debtors did not stipulate that they transferred a security interest to Robert. Rather, they agreed that they scheduled the Corvette as subject to a security interest held by Robert and that they "delivered the original title certificate and keys to the Corvette to Robert Wharton in July 2011."

Whether these facts constitute a "transfer" is a legal conclusion controlled by Nevada law. These stipulated facts are sufficient to show that Steven gave Robert an interest in the 1965 Corvette as a condition of obtaining the $80,000 loan, and that Robert held onto the title and keys to ensure repayment.[7] These facts, coupled with the language in the promissory note, show a "transfer" of "an interest in personal property [that]

[7] To the extent Debtors contend no "transfer" occurred because they had physical possession of the Corvette, they are mistaken. The "transfer" at issue is the transfer of the security interest.

-16-

secure[d] payment . . . of an obligation." NRS 104.1201(ii). There was thus a "transfer" of a security interest in the Corvette to Robert under Nevada law and Debtors did agree that it was voluntary. Debtors are bound by these stipulated facts. See E.H. Boly & Son, Inc. v. Schneider, 525 F.2d 20, 23 n.5 (9th Cir. 1975).

Second, Debtors' contention that the description of the collateral in the promissory note was inadequate is disingenuous. One treatise explains:

> The principal function of the description requirement is to enable the parties themselves to identify the collateral, and if the parties to the agreement understand what collateral was pledged, the security interest cannot be challenged on the basis that the agreement insufficiently describes the collateral.

79 C.J.S. Secured Transactions § 45 (June 2011). Here, there is no doubt that the parties to the promissory note - Robert and Steven - understood what collateral was pledged - the 1965 Corvette. Therefore, Debtors cannot challenge their transfer of the security interest in the "1965 Corvette" on the basis that the promissory note insufficiently described the collateral. Moreover, a description of collateral under Nevada law is sufficient when "it reasonably identifies what is described." NRS 104.9108(1). This lenient description standard is met by the description of the collateral as a "1965 Corvette".

In sum, Robert's security interest attached to the Corvette as all the requirements for attachment under Nevada law were met: value was given, Debtors had rights in the Corvette, and Steven authenticated (signed) the promissory note (security agreement) that provided an adequate description of the

-17-

collateral. Robert's lien against the Corvette was thus enforceable. Moreover, Debtors agreed that they voluntarily gave Robert a security interest. Accordingly, the voluntary transfer element under § 522(g)(1)(A) has been met.

The case law cited by Debtors — Sutton, Seibold, and Dolven — do not support a contrary conclusion regarding the transfer element. As shown below, unlike here, in each of those cases no security interest was ever created by the debtor's actions. Accordingly, there was no transfer of an interest to avoid and recover.

Sutton involved a Missouri statute which set forth the requirements for attachment of a security interest which is identical to Nevada's statute: i.e., value must have been given; the debtor must have rights in the collateral; and the debtor must have authenticated a security agreement that provides a description of the collateral (a vehicle). In re Sutton, 365 B.R. at 904. Similar to this case, a family member, Mrs. Sutton's father, loaned money to the debtors to purchase a vehicle. However, there was no underlying security agreement and only a notation on the application for the title on the vehicle which listed Mrs. Sutton's father as a lien holder. The Suttons filed a chapter 7 petition and claimed the entire fair market value of the vehicle exempt and also listed Mrs. Sutton's father as a secured creditor in their Schedule D. Sometime postpetition, the debtors sold the vehicle and the father released whatever interest he had in the vehicle so the sale could close.

After the debtors filed a chapter 7 petition, the trustee

-18-

sought to avoid the father's interest in the vehicle under § 544(a) and also filed an objection to the debtors' claim of exemption under § 522(g)(1)(A). The father conceded that he did not have a security interest in the vehicle. The bankruptcy court entered judgment in favor of the trustee on his action, but overruled his objection to the debtors' exemption in the vehicle in two separate orders. In the adversary order, the court noted that the debtors had not authenticated a written security agreement in favor of the father and thus the father did not possess an interest in the vehicle. Although the trustee filed the action under § 544(a) to avoid the lien, the court's order did not grant a § 544 avoidance but instead granted judgment for the trustee based on a declaration that no security interest existed. Id. at 906.

In overruling the trustee's objection to the exemption, the bankruptcy court found that since there was no valid security agreement in favor of the father, the debtors did not make a prepetition voluntary transfer of an interest in the vehicle to him and thus § 522(g)(1)(A) was inapplicable. In short, since there was no lien, there was nothing to avoid or recover and thus § 522(g) was not applicable. On appeal, the bankruptcy appellate panel affirmed, essentially following the same reasoning as the bankruptcy court.

Similarly, Seibold involved a motor vehicle and the lack of an authenticated security agreement. In re Seibold, 351 B.R. at 741. The chapter 7 trustee alleged that the debtor's father had an "unperfected" security interest that could be avoided and obtained a stipulation from him whereby the father surrendered

-19-

the certificate of title and agreed to file an unsecured claim. The debtor then filed a second amended Schedule C, again asserting an exemption in the vehicle and adding another exemption in the car under a different Idaho statute. The bankruptcy court ultimately ordered the debtor to give possession of the vehicle to the trustee, who sold the vehicle at auction.

After the sale, the debtor filed a motion seeking to enforce her exemptions in the vehicle. The trustee contended that § 551 applied to preserve the lien he had avoided for the benefit of creditors. The bankruptcy court disagreed, concluding that no security interest ever attached under Article 9 of the UCC because there was never a written security agreement authenticated by the debtor. The bankruptcy court held that without the avoidance of an underlying lien, § 551 did not apply. Accordingly, the court granted the debtor's motion to enforce her exemption claims against the funds.

Last, in Dolven the bankruptcy court found that the creditor-bank did not have a lien on real property owned by the debtor because there was no writing containing a legal description of the property - a requirement for a lien under Idaho law. In re Dolven, 549 B.R. at 386. Again, since there was no lien to avoid, the court found that the trustee had not recovered anything to which § 522(g) was relevant.

Unlike any of these cases, Debtors had voluntarily transferred a security interest in the Corvette to Robert which had attached and was enforceable under Nevada law.

///

-20-

## 2.    The Recovery Element

Although Debtors transferred a security interest to Robert, that interest was not perfected.  Nevada law requires the secured interest to appear on the state-issued certificate of title.  In re Schwalb, 347 B.R. at 746.  That was not done here.  As a result, Robert's unperfected interest was subject to avoidance under § 544[8] and subject to recovery for the benefit of the estate under § 550.  The bankruptcy court properly found Trustee had avoided the interest and recovered it for the estate.

In its oral ruling, the bankruptcy court found that the recovery requirement under § 522(g) had been met even though Trustee had not filed an adversary proceeding.  The court noted that it was Trustee's Turnover Motion and the threat of using his avoidance powers under § 544(a) which caused Debtors to amend their Schedules to claim the Corvette exempt and show that Robert's lien had been released.  Since Debtors do not challenge

---

[8] Section 544 provides in relevant part:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by--

        (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists; . . . .

any of these findings on appeal, those arguments are deemed waived.  Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir. 1999).

Moreover, the Ninth Circuit has held that the word "recovers," as used in § 522(g), does not necessarily require a formal adversary action or proceeding; rather, the ordinary meaning of the word suggests that a trustee may "recover" property in a number of ways, including by merely using the threat of avoidance powers to induce a debtor or transferee to return the property to the estate.  In re Glass, 60 F.3d at 568.  In other words, "[t]he filing of the objection [to the exemption] containing the threat to use avoidance powers which resulted in the reconveyance of the property to the estate was 'some action'" taken by the trustee to recover the property.  Id. at 569.

In sum, all the requirements for application of § 522(g)(1)(A) have been met.  Accordingly, Debtors are unable to claim an exemption in the Corvette.

**C.   Ordering turnover of the vehicle was proper.**

With several exceptions not applicable here, under § 542, a trustee may seek turnover of estate property.  Section 542(a) provides:

> Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

Steven was the sole owner of the vehicle listed on the title certificate and was in possession of the Corvette at all

times.  Accordingly, on the petition date, the vehicle became property of Debtors' estate whether it was exempt or not. Taylor, 503 U.S. at 642 (property that is claimed as exempt is included as property of the estate by § 541(a)).  As the bankruptcy court properly found, Debtors were not entitled to exempt the Corvette under § 522(g)(1)(A).  Therefore, the bankruptcy court did not err in granting Trustee's Turnover Motion.

## VI.  CONCLUSION

For the reasons stated above, we AFFIRM.