FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# FOR THE FIRST CIRCUIT

———————————————————

**BAP NO. MS 19-024**

———————————————————

**Bankruptcy Case No. 18-30653-EDK**

———————————————————

**ANGILENE S. BROWN,**
**Debtor.**

———————————————————

**DAVID W. OSTRANDER, Chapter 7 Trustee,**
**Appellant,**

**v.**

**ANGILENE S. BROWN,**
**Appellee.**

———————————————————

**Appeal from the United States Bankruptcy Court**
**for the District of Massachusetts**
**(Hon. Elizabeth D. Katz, U.S. Bankruptcy Judge)**

———————————————————

**Before**
**Cabán, Finkle, and Cary,**
**United States Bankruptcy Appellate Panel Judges.**

———————————————————

David W. Ostrander, Esq., on brief for Appellant.
Eric D. Kornblum, Esq., on brief for Appellee.

———————————————————

**May 21, 2020**

———————————————————

**Cary, U.S. Bankruptcy Appellate Panel Judge.**

David W. Ostrander, the chapter 7 trustee (the "Trustee"), appeals from the bankruptcy court's May 16, 2019 order (the "Order") denying his motion to compel turnover (the "Turnover Motion"). In that motion, the Trustee sought turnover of $18,000, the amount of a check which the debtor, Angilene S. Brown (the "Debtor"), received pre-petition but did not cash. The check represented the proceeds of a loan from the Debtor's retirement account. The crux of this appeal is whether the funds represented by the unnegotiated check are excluded from property of the estate under § 541(c)(2) or § 522(d)(12) and are therefore not subject to the Turnover Motion.[1] For the reasons set forth below, we conclude that the funds are estate property and the Debtor's attempt to exempt them fails. Accordingly, we **REVERSE** the Order and **REMAND** for entry of an order consistent with this opinion.

## BACKGROUND

The Debtor filed a petition for chapter 7 relief on August 6, 2018. The next day, the Trustee was appointed. On her Schedule A/B, the Debtor disclosed that she held $50,600 in a Costco 401(k) retirement plan (the "401(k) plan"). On Schedule C, the Debtor elected the federal exemptions provided in § 522(d) and listed the 401(k) plan. She further indicated the value of her interest in the plan was $50,600 and claimed as exempt under § 522(d)(12) "100% of [the plan's] fair market value, up to any applicable statutory limit."

---

[1] Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, et seq. All references to "Rule" are to the Federal Rules of Bankruptcy Procedure.

2

The Debtor appeared at the first § 341 meeting of creditors on September 25, 2018.[2] Based on payment advices the Debtor provided to the Trustee prior to the meeting, the Trustee questioned her about certain loan repayments to the 401(k) plan. The Debtor testified that she borrowed $18,000 from the 401(k) plan in July 2018 and admitted that the deductions on her payment advices were to repay that loan. After further questioning, the Debtor stated that she still possessed the $18,000 check (the "check") representing the loan proceeds received from the administrator of the 401(k) plan. The Debtor, however, did not list the check in her schedules. As discussed below, the Debtor's position is that her claimed exemption of the entire amount held in the 401(k) plan encompasses the sum represented by the check.

After learning about the check, the Trustee asked the Debtor to deliver it to her attorney. Although the Debtor's attorney confirmed that he had received the check from the Debtor, he never turned it over to the Trustee.

On February 27, 2019, the Trustee filed the Turnover Motion, asking the bankruptcy court to compel the Debtor to turn over $18,000 to the bankruptcy estate. In support, he asserted that the sum represented by the check was "*non-exempt* property of the [b]ankruptcy [e]state." (emphasis added). The Debtor objected to the Turnover Motion, asserting that the uncashed check was "still part of the 401(k) plan" and, therefore, exempt.

In his memorandum of law filed in support of the Turnover Motion, the Trustee argued:

The check, and the funds represented thereby, is property of the estate. The fact that the Debtor had not cashed the check as of the Petition Date is immaterial. The analogy would be as if the Debtor issued a personal check from her bank

---

[2] The bankruptcy court's docket reflects that the creditors' meeting was subsequently continued to several dates, with the last meeting scheduled for August 13, 2019. See U.S. Bank N.A. v. Blais (In re Blais), 512 B.R. 727, 730 n.2 (B.A.P. 1st Cir. 2014) (stating the Panel "may take judicial notice of the bankruptcy court's docket and imaged papers"). There is nothing in the bankruptcy court's docket to indicate that the meeting was continued after August 13, 2019.

account to herself for $18,000 and then argued that the check was not property of the estate because it had not yet been "cashed." Another analogy would be if the Debtor held a winning lottery ticket for a certain sum of money as of the Petition Date that had not yet been "cashed" or redeemed. The money represented by that lottery ticket would clearly be property of the estate.

The Trustee cited to Marchand v. Whittick (In re Whittick), 547 B.R. 628 (Bankr. D.N.J. 2016), in which a New Jersey bankruptcy court held that a loan check issued to and received by the debtor from his retirement account one day prior to his bankruptcy filing was property of the bankruptcy estate even though the check was not cashed until after the bankruptcy filing. Relying on Whittick, the Trustee maintained that the loan proceeds could not be excluded from the bankruptcy estate under § 541(c)(2) because they had been distributed to the Debtor and were "within her possession and control" when her bankruptcy case was filed. In addition, the Trustee complained that the Debtor had not amended her schedules to disclose or exempt the $18,000 represented by the check.

Following a non-evidentiary hearing, the bankruptcy court denied the Turnover Motion. Ruling from the bench, the court adopted the Debtor's reasoning that the check represented exempt property from her retirement account and declined to follow the Whittick decision, stating:

> I do agree with the [D]ebtor that the [Trustee's] analogies fail. The check here was drawn on an account of a third party, not the [D]ebtor's own funds, and they remained in an exempt account until she cashed those funds. . . . [T]he [D]ebtor had an equitable future contingent interest in the loan proceeds once the loan application was approved, but the fact that the [D]ebtor didn't cash the check means that they're still exempt funds.

> In the Whittick case the debtor postpetition deposited the check, but that doesn't - - I just completely disagree with the judge from New Jersey. . . . I'm surprised that that's the outcome that that judge came to because I just consider the funds as still being in that 401(k) account at the time the bankruptcy case was filed and, therefore, they're exempt funds.

4

On the same date, the bankruptcy court entered the Order which provided: "For the reasons stated in open court, [the Turnover] Motion is denied."

This appeal followed.

## JURISDICTION

We have jurisdiction to consider appeals from final orders. See 28 U.S.C. § 158(a)(1) & (b)(1); see also Ritzen Grp., Inc. v. Jackson Masonry, LLC, 140 S. Ct. 582, 587 (2020); Bullard v. Blue Hills Bank, 135 S. Ct. 1686, 1692 (2015). A bankruptcy court order denying a motion for turnover is a final, appealable order. Redmond v. Erickson (In re Erickson), No. KS-11-005, 2011 WL 3793831, at *2 (B.A.P. 10th Cir. Aug. 26, 2011); Weinman v. Graves (In re Graves), 396 B.R. 70, 72 (B.A.P. 10th Cir. 2008), aff'd as modified, 609 F.3d 1153 (10th Cir. 2010). Therefore, we have jurisdiction.

## STANDARD OF REVIEW

We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. Wiscovitch Rentas v. Molina González (In re Morales García), 507 B.R. 32, 42 (B.A.P. 1st Cir. 2014) (citation omitted). Orders denying motions to compel turnover are reviewed de novo. In re Graves, 396 B.R. at 72.

## DISCUSSION

I.    The Standards

A.    Section 542(a) and Turnover

The Trustee sought an order under § 542(a) compelling the turnover of $18,000. Section 542(a) provides, in relevant part:

> [A]n entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to

5

the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a). To succeed in a cause of action for turnover, the trustee must establish that:

> (1) the property is (or was during the bankruptcy case) in the possession, custody or control of a noncustodial third party; (2) the property constitutes property of the estate; (3) the property is of the type that the trustee could use, sell or lease pursuant to section 363 or that the debtor could exempt under section 522; and (4) that the property is not of inconsequential value or benefit to the estate.

Wiscovitch Rentas v. Rodriguez Mojica (In re Rodriguez Cossio), Adv. Pro. No. 18-00049, 2019 WL 3889525, at *4 (Bankr. D.P.R. Aug. 16, 2019) (quoting Alan N. Resnick & Henry J. Sommer, 5 Collier on Bankruptcy ¶ 542.03 (16th ed. 2019)).

There is no contest that the check is in the possession, custody or control of a noncustodial third party; is of the type that the Trustee could use, sell, or lease pursuant to § 363; and has value or benefit to the estate. This leaves the question of whether the $18,000 check constitutes property of the estate. The Trustee has consistently maintained the check is estate property. The Debtor's position appears to be that even if it were, it is exempted from property of the estate under § 522(d)(12).

**B.      Property of the Estate under § 541(a) and the § 542 Exception**

Property of the estate broadly includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "[E]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541." In re Yonikus, 996 F.2d 866, 869 (7th Cir. 1993), abrogated on other grounds by Law v. Siegel, 571 U.S. 415 (2014) (citation omitted).

6

Section 541(c)(2) provides that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2). The U.S. Supreme Court ruled that "applicable nonbankruptcy law" as used within § 541(c)(2) refers not only to state law but also embraces federal law such as the Employee Retirement Income Security Act of 1974 ("ERISA"). Patterson v. Shumate, 112 S. Ct. 2242, 2246 (1992). "The result of Patterson is that employee retirement benefits under ERISA-qualified pension plans are excluded from a debtor's bankruptcy estate." In re Orkin, 170 B.R. 751, 753 (Bankr. D. Mass. 1994).

"[F]unds held in retirement plans that are subject to the anti-alienation provisions of [ERISA] are within the purview of the § 541(c)(2) exclusion and cannot be administered by the trustee[.]" In re O'Neal, 462 B.R. 324, 331 (Bankr. D. Mass. 2011) (discussing Patterson). That is not the case for funds distributed, loaned, or withdrawn from an ERISA-qualified retirement account pre-petition as they lose their anti-alienation protection and become estate property. See In re Weinhoeft, 275 F.3d 604, 606 (7th Cir. 2001) ("[C]ash on hand is not shielded from creditors' claims by § 541(c)(2) . . . ."); Trucking Emps. of N. Jersey Welfare Fund, Inc. v. Colville, 16 F.3d 52, 55-56 (3d Cir. 1994) (holding that ERISA's anti-alienation provisions applied only to actions against the plan, not the distributions to the beneficiary); Velis v. Kardanis, 949 F.2d 78, 83 (3d Cir. 1991) (stating, pre-Patterson, to the extent of distributions made from the pension plans to the debtor or for his benefit, "there are no enforceable restrictions which preclude treating those distributions as part of the estate of the debtor"); Feldman v. People First Fed. Credit Union (In re White), Adv. Pro. No. 18-0131, 2019 WL 2067360, at *1 (Bankr. E.D. Pa. May 8, 2019); In re Whittick, 547 B.R. at 637 ("[S]ection 541(c)(2) only excludes from property of the estate the trust assets themselves, not the

7

distributions.") (citation omitted); In re McDonald, No. 03-12019C, 2003 WL 23211570, at *2 (Bankr. M.D.N.C. Sept. 27, 2003); Eisenberg v. Houck (In re Houck), 181 B.R. 187, 190 (Bankr. E.D. Pa. 1995).

## II.     The Standards Applied

### A.     The Check is Property of the Estate

Because courts have stated the subject property must, "first and foremost, be undisputed property of the bankruptcy estate" in order to be recovered under § 542, we begin with this issue. Dots, LLC v. Pandora Media, Inc. (In re Dots, LLC), Adv. Pro. No. 16-01040 (MBK), 2017 WL 3311223, at *7 (Bankr. D.N.J. June 16, 2017) (citing In re Whittick, 547 B.R. at 634); see also Stanziale v. Pepper Hamilton LLP (In re Student Fin. Corp.), 335 B.R. 539, 554 (D. Del. 2005). In reaching its decision that the unnegotiated check was still part of the Debtor's 401(k) plan and was therefore exempt property, the bankruptcy court implicitly determined that the plan funds and the check were estate property.[3] This conclusion stems from the principle that "an interest that is not possessed by the estate cannot be exempted." Owen v. Owen, 500 U.S. 305, 308 (1991). Moreover, by failing to address the Trustee's assertion that the check was property of the estate in her brief, the Debtor waived the issue. See United States v. Bayard, 642 F.3d 59, 63 (1st Cir. 2011) (stating failure to brief an issue waives it). Thus, whether by application of waiver principles, or the above line of cases holding that distributed funds lose their § 541(c)(2) protection, we conclude the Trustee satisfied his burden of proving that the check is property of the estate.

---

[3] The Debtor acknowledged as much during the hearing on the Turnover Motion, stating "[the check] may be property of the estate, but exempt under [§] 522(d)(12)."

**B.        The Check, or the Funds Represented Thereby, May Not Be Exempted**

That conclusion, however, does not automatically compel a determination that turnover was warranted.  Given that the Debtor's interest in the $18,000 disbursement from her 401(k) account is not excluded from property of the estate by § 541(c)(2), the Debtor's claimed exemption of that interest pursuant to § 522(d)(12) "becomes pivotal."[4]  Cardiello v. Seaton (In re Seaton), 346 B.R. 389, 392 (Bankr. W.D. Pa. 2006); see also In re Whittick, 547 B.R. at 638 ("[I]f not excluded from property of the estate by [§] 541(c)(2), the Debtor may only protect the asset if an exemption applies.") (citation omitted).

 "An exemption is an interest withdrawn from the estate (and hence from the creditors) for the benefit of the debtor."  Owen, 500 U.S. at 308.  Section 522(l) provides that "[t]he debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section."  11 U.S.C. § 522(l).  "Unless a party in interest objects, the property claimed as exempt on such list is exempt."  11 U.S.C. § 522(l).  A party objecting to a debtor's claim of exemptions "has the burden of proving that the exemptions are not properly claimed."  Fed. R. Bankr. P. 4003(c).

Under Rule 4003(b)(1), "a party in interest may file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later."  Fed. R. Bankr. P. 4003(b)(1).  "Strict adherence to the deadline, unless extended by the [c]ourt on a request made before expiration of that deadline, is critical."  In re Vierstra, 490 B.R.

---

[4] Section 522(d)(12) permits the debtor to exempt "[r]etirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code."  11 U.S.C. § 522(d)(12).

146, 149 (Bankr. D. Mass. 2013). "If no timely objection to an unambiguously-described and duly-listed exemption is filed, the property claimed as exempt is *deemed* exempt, regardless of whether the debtor had a colorable basis for claiming the exemption in the first place."[5] Id. (citing Taylor v. Freeland & Kronz, 503 U.S. 638, 642-44 (1992); Mercer v. Monzack, 53 F.3d 1, 3 (1st Cir. 1995)); see also Law v. Siegel, 571 U.S. at 423 ("[A] trustee's failure to make a timely objection prevents him from challenging an exemption.").

### 1.     The Turnover Motion Gave Timely Notice of the Trustee's Objection to the Debtor's Supposed Claimed Exemption of the Check

Admittedly, the Trustee never filed a document styled as an objection to the Debtor's exemption claim and "[w]e may not reach the merits of the claimed exemption[ ] absent a finding that [an] . . . objection[ ] w[as] timely made." Smith v. Kennedy (In re Smith), 235 F.3d 472, 475 (9th Cir. 2000). Although the bankruptcy court did not make a specific finding on this issue, the Debtor never raised the argument that the Trustee failed to timely object to her claimed exemption of the check. Therefore, we again treat an issue as being waived. See United States v. Bayard, 642 F.3d at 63.

However, even if the issue were not waived, the record would still support a conclusion that: (a) the Trustee objected; and (b) the objection was timely. Rule 4003(b) "pr[e]scribes no particular form for objections to exemption claims." Spenler v. Siegel (In re Spenler), 212 B.R. 625, 629 (B.A.P. 9th Cir. 1997). Thus, courts have deemed actions taken by a creditor or a

---

[5] Whether the Debtor "unambiguously described" her claimed exemption is an open question. Although the Trustee complained that the Debtor never amended her schedules to list or exempt the check, he never argued that the Debtor's claimed exemption of the entire 401(k) plan failed to unambiguously describe her claimed exemption of the check. That issue is therefore waived, see United States v. Bayard, 642 F.3d at 63, and we decide this appeal on other grounds.

trustee as objections under Rule 4003(b), "even though no pleading styled 'objection to exemption' was filed." Id. at 630 (citing cases).[6] In the first sentence of the Turnover Motion, the Trustee explicitly asserted the check was "non-exempt property of the [b]ankruptcy [e]state" and in the motion's prayer for relief, the Trustee requested an order compelling "the Debtor to turn over to the Bankruptcy Estate the amount of $18,000 . . ." And, in his supporting memorandum of law, the Trustee complained that the Debtor never amended her schedules to specifically exempt the check. In this manner, the Turnover Motion gave the Debtor notice that he objected to her claimed exemption and thus satisfied Rule 4003(b)'s purpose.[7] See id. (stating Rule 4003(b)'s purpose is to provide the debtor with timely notice of an objection to a claimed exemption and treating trustee's fraudulent transfer complaint as an objection to exemption). In her objection to the Turnover Motion, the Debtor made it clear that she understood the specifics of the Trustee's challenge as she defended the exempt character of the check, asserting "[t]he check represents a partial interest of the 100% exempt 401(k) plan listed in her case." The Debtor, therefore, would be hard-pressed to argue that she was prejudiced by lack of notice that the Trustee objected to her claimed exemption.

We now address whether the objection was timely. As noted above, objections to claimed exemptions must be filed "within 30 days after the meeting of creditors held under

---

[6] See, e.g., Liberty State Bank & Trust v. Grosslight (In re Grosslight), 757 F.2d 773, 777 (6th Cir. 1985) (treating complaint seeking relief from the automatic stay as an objection to the claim of exemptions); Wharton v. Schwartzer (In re Wharton), 563 B.R. 289, 296-97 (B.A.P. 9th Cir. 2017) (deeming trustee's reply brief to objection to turnover motion as an objection where the brief set forth the trustee's basis for objecting to debtor's exemption); Labbadia v. Martin (In re Martin), Adv. Pro. No. 19-03001 (AMN), 2019 WL 3543778, at *6 (Bankr. D. Conn. Aug. 2, 2019) (viewing complaint under § 522(o) as an objection to exemption).

[7] We note, however, that an "express objection" to claimed exemptions remains the "better practice." Lee v. Field (In re Lee), 889 F.3d 639, 645 (9th Cir. 2018).

§ 341(a) is concluded." Fed. R. Bankr. P. 4003(b)(1). Here, the first § 341 meeting of creditors was held on September 25, 2018. Thereafter, the meeting was repeatedly adjourned to a specific date, with the last meeting scheduled for August 13, 2019. After that date, the Trustee never filed a statement announcing the date and time of the adjourned meeting. Because Rule 2003(e) requires this action to effectuate an adjournment, Vierstra, 490 B.R. at 151, the creditors' meeting was never adjourned after August 13, 2019. Thus, the docket establishes that the meeting was concluded on August 13, 2019. See Jenkins v. Simpson (In re Jenkins), 784 F.3d 230, 238 (4th Cir. 2015) (treating § 341 meeting as concluded under similar circumstances). Accordingly, viewing the February 27, 2019 Turnover Motion as an objection to the Debtor's claimed exemption, we conclude the record shows that the de facto objection was timely as it was filed months before the conclusion of the § 341 meeting.

### 2. The Debtor Cannot Prevail on her Claimed Exemption

"[A]n exemption claimed under [§] 522(d)(12) must satisfy two requirements: (1) the amount the debtor seeks to exempt must be retirement funds, and (2) those retirement funds must be *in an account* that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code." Chilton v. Moser (In re Chilton), 674 F.3d 486, 488 (5th Cir. 2012) (citing Doeling v. Nessa (In re Nessa), 426 B.R. 312, 314 (B.A.P. 8th Cir. 2010)) (emphasis added), abrogated on other grounds by Clark v. Rameker, 134 S. Ct. 2242 (2014); see also Rice v. Allard (In re Rice), 478 B.R. 275, 280 (E.D. Mich. 2012). Here, the bankruptcy court, without explaining the legal basis for its decision, implicitly concluded that the two requirements articulated in Chilton were satisfied when it stated from the bench: "I just consider the funds as still being in that 401(k) account at the time the bankruptcy case was filed and, therefore, they're exempt funds." We conclude otherwise.

12

Although there is no controlling authority in the First Circuit, several well-reasoned decisions hold that distributed funds do not retain their exempt character if not placed in another account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code. In In re Sullivan, 596 B.R. 325, 332-33 (Bankr. N.D. Tex. 2019), for example, a Texas bankruptcy court concluded that the distribution of funds from a retirement account caused those funds to lose their exempt status. That court explained:

> A fundamental rule of statutory construction requires courts to give effect to every word, clause, and provision in a given statute so that no part of the statute would be rendered insignificant, inoperative, or superfluous. Therefore, when analyzing a debtor's exemption under § 522(d)(12), the Court must analyze and apply the entirety of § 522.
>
> In this case, the source of the exemption dispute revolves around the *distribution* of the Exempt Retirement Funds to the Debtors. Sections 522(b)(4)(C) and (D) specifically address the impact that a *distribution* of retirement funds may have on their exempt status. And both subsections expressly apply to § 522(d)(12).
>
> Sections 522(b)(4)(C) and (D) provide that exempt retirement funds that are (i) directly transferred from one eligible fund to another eligible fund, or (ii) *distributed* from an eligible fund and then subsequently rolled over and deposited into another eligible fund within sixty days after the *distribution* do not "cease to qualify for exemption under . . . subsection (d)(12) by reason of such distribution." Applying § 522(b)(4)(D)(ii) in context and in its place in the overall statutory scheme, it is apparent that under federal law, Congress intended to extend the exemption protection to distributions only to the extent such distributions are deposited into another eligible fund within sixty days after such a distribution. If the funds are not deposited into another eligible fund within sixty days after distribution, the exemption protection ceases.
>
> In this case, there is no dispute that the Gross Distribution was not rolled over into an eligible fund within sixty days as required by § 522(b)(4)(D)(ii). Therefore, the Exempt Retirement Funds lost their exempt status and the Gross Distribution became property of the bankruptcy estate under § 1306(a)(1).

Id. (footnotes omitted).

Similarly, in Merillat v. Miller (In re Merillat), No. 14-10896, 2014 WL 1846105, at *6-8 (E.D. Mich. May 8, 2014), a district court held that funds received from a voluntary liquidation

13

of a 401(k) account were not exempt because the check representing those funds was not in a tax-exempt fund or account at the time of the bankruptcy filing.

In the present case, the record reflects that the loan proceeds that are the subject of the Debtor's challenged exemption were distributed on July 12, 2018—i.e., about three weeks before she filed for bankruptcy. The record further reflects that *as of the petition date*, the check representing the loan distribution from the retirement account was in the Debtor's possession or control. The Debtor did not roll over the funds into another qualified retirement plan or other tax-exempt fund or account within 60 days of their distribution to her. As of the petition date, the loan proceeds that the Debtor attempts to exempt were no longer "in" one of the tax-exempt funds listed in § 522(d)(12). It follows from the above-cited cases that the loan proceeds lost their protection when the Debtor failed to roll them over into another eligible fund within 60 days of their distribution to the Debtor. Therefore, the $18,000 cannot be exempted from estate property.

The Debtor's argument that the loan was not "finalize[d]" because she never cashed the check is not supported by any legal authority or the record.[8] Courts have already considered and rejected similar arguments. In so doing, these courts have diverged from the bankruptcy court's position that funds distributed from a 401(k) account via check remain in the account until the check is cashed. In Merillat, for example, the district court rejected the debtor's argument that the distributed retirement funds retained their tax-exempt status as retirement funds until the check was cashed. See 2014 WL 1846105, at *7. The Whittick court was similarly unpersuaded by an argument that the loan was incomplete until the check was cashed:

---

[8] As noted above, the Debtor admitted that she borrowed the money from her 401(k) plan and began repaying the loan through payroll deductions.

The defendants cite <u>Barnhill v. Johnson</u>, 503 U.S. 393, 112 S. Ct. 1386, 118 L. Ed. 2d 39 (1992), for the proposition that a transfer made by check occurs when the check is honored, not when it is received. Therefore, the loan proceeds did not become property of the estate until the Check was cashed. But <u>Barnhill</u> is concerned with when a transfer of property of the estate occurs (for the purposes of a preference), while this court is concerned with when a debtor obtains an interest in property that then becomes property of the estate.

The defendants' argument that the loan was not complete, and therefore no interest in the proceeds became property of the estate, until the Debtor cashed the check ignores that the loan was approved prepetition, evidenced by the issuance of the check. The Debtor's right to return the check does not change that the loan was approved prepetition.

<u>In re Whittick</u>, 547 B.R. at 636 (footnote omitted).

As one bankruptcy court aptly stated when it disallowed a claimed exemption for withdrawn retirement funds that were not rolled over into a retirement vehicle: "A debtor's election on how to handle his or her assets may unintentionally waive protections otherwise provided by the Code or state law." <u>In re Kane</u>, No. 99-02153, 1999 WL 33490225, at *5 (Bankr. D. Idaho Nov. 24, 1999) (ruling distributed funds lost their status as exempt retirement funds when the account was liquidated and a check to the debtor was issued).

Here, the record reflects that, prior to filing for bankruptcy relief, the Debtor took steps to borrow $18,000 from her ERISA-qualified retirement account. The plan administrator approved the borrowing, issued the $18,000 check to her, and established a loan repayment arrangement whereby deductions were made from the Debtor's paycheck. The Debtor never negotiated the $18,000 check; nor did she deposit it in a tax-exempt fund within the 60-day period. Thus, viewed within the framework of prevailing law, the record establishes that the $18,000 disbursement from her 401(k) lost its exempt status, is property of the Debtor's bankruptcy estate, and is the proper subject of a turnover motion pursuant to § 542.

15

## CONCLUSION

In light of the foregoing, we **REVERSE** the Order and **REMAND** for entry of an order consistent with this opinion.[9]

---

[9] We note that the Trustee failed to appear for oral argument on Monday, February 10, 2020, despite having received special permission from the Panel, pursuant to his own motion, to appear telephonically. "Any unexcused failure to appear for a scheduled court hearing . . . may be grounds for sanctions, including monetary sanctions or dismissal of the case." Ostigny v. Camp, No. 3:07CV1777 (RNC), 2009 WL 1010525, at *2 (D. Conn. Apr. 14, 2009); see also Fed. R. Bankr. P. 8003(a)(2) ("An appellant's failure to take any step other than the timely filing of a notice of appeal . . . is ground . . . for the . . . BAP to act as it considers appropriate, including dismissing the appeal."). We decline to exercise our discretion to impose sanctions. That the Trustee left weekend telephone messages with the BAP clerk's office regarding his sudden inability to appear for oral argument due to an unexpected change in his travel plans, helps tilt the scale against the imposition of sanctions. We remind the Trustee that the unexcused failure to appear for oral argument is a serious offense which hinders the administration of justice.